UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
RITA T. FLAHERTY

                  Plaintiff,

     -against-

ANDREW SAUL,
Commissioner of Social Security,

                  Defendant.

-----------------------------------------------x

**<u>MEMORANDUM AND ORDER</u>**

Case No. 1:17-cv-06463-FB

<u>Appearances</u>:
*For the Plaintiff*:
CHRISTOPHER J. BOWES, ESQ.
54 Cobblestone Drive
Shoreham, New York 11786

*For the Defendant*:
RICHARD P. DONOGHUE, ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
BY: RACHEL G. BALABAN, ESQ.

**BLOCK, Senior District Judge:**

Rita T. Flaherty seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings, with Flaherty asking for remand for further administrative proceedings and the Commissioner asking for a full affirmance. Because the Commissioner failed to properly apply the treating

1

physician rule, Flaherty's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings consistent with this opinion.

## I

Flaherty, a former payroll clerk,[1] was diagnosed with rheumatoid arthritis in 2002. Flaherty filed for DIB on November 19, 2014, alleging an onset date of October 21, 2014. She was treated by Dr. Gary Meredith from 2002 to 2016, and Dr. Douglas Mund after Dr. Meredith retired in June 2016.

In an assessment dated November 15, 2014 Dr. Meredith opined that Flaherty could only sit for up to four hours in an eight-hour work day and could only stand for two hours. Dr. Meredith also reported that Flaherty could only grasp, turn and twist object with her hands 5% of the time, conduct fine manipulations with her fingers 5% of the time, and use her arms for reaching 10% of the time. In another assessment, dated March 22, 2016, Dr. Meredith reported that Flaherty could only sit for two hours in an eight-hour workday and stand for at most one hour.

When Dr. Mund took over as Flaherty's treating physician, he opined after a single examination that Flaherty was "relatively functional" and there was

---

[1] Flaherty testified that she still performs occasional contractor work on a per diem basis, working approximately three to four hours a week. *See* Administrative Record ("AR") at 32.

"generally full painless range of motion of all peripheral joints" with only "mild tenderness" of two joints in the left hand. AR at 342–43.

The Commissioner ordered a consultative examination by Dr. Carol Sasportas, who diagnosed Flaherty with rheumatoid arthritis with diffuse arthralgias, fatigue, and generalized weakness. However, Dr. Sasportas reported that Flaherty retained full range of motion of her left wrist and that Flaherty's medications helped alleviate many of the negative symptoms of her rheumatoid arthritis.

Flaherty testified at a hearing before Administrative Law Judge ("ALJ") Alan B. Berkowitz. Vocational Expert ("VE") Dawn Blythe testified as well. The ALJ rendered his decision on April 24, 2017. He determined that Flaherty had a residual functional capacity ("RFC") to perform sedentary work, except that she was limited to sitting for twenty minutes at a time, and that she can perform occasional postural movements. This resulted in a finding that Flaherty could perform past relevant work and thus was not disabled.[2] In reaching his conclusion, the ALJ gave little

---

[2] In making a disability determination, the Commissioner applies a five-step sequential evaluation process, in which he must decide "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that

weight to Dr. Meredith's assessments but gave great weight to the consultative examiner's opinion. Flaherty's request for review was summarily denied by the Appeals Council on August 31, 2017, making the ALJ's opinion the final decision of the Commissioner. This civil action followed.

## II

### A.    The Treating Physician Rule

According to the treating physician rule, the ALJ must give controlling weight to the opinion of a treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alterations omitted) (quoting 20 C.F.R. § 404.1527(c)(2)). When a treating physician's opinion is not given controlling weight, the ALJ must then decide how much weight to give it. *See id.* at 129. The ALJ must weigh the following nonexclusive factors: "(1) the frequently [sic], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the

_____

the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Here, the ALJ stopped after the fourth step because he found that Flaherty could perform past relevant work.

physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129). These factors must be addressed "explicitly," *id.*, and failure to do so is a procedural error, *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019). In the ALJ commits such an error, the Court must conduct "a searching review of the record" and need not remand if it determines that the treating physician rule was followed in substance, rendering the error harmless. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam); *see Estrella*, 925 F.3d 96–98.

Here, the ALJ committed procedural error because he did not explicitly consider the first *Burgess* factor in his decision—the considerable length of time that Dr. Meredith had been treating Flaherty. Moreover, the three reasons he gave for discounting Dr. Meredith's opinion—(1) some internal inconsistencies in Dr. Meredith's report, (2) the lack of recent treatment records, and (3) the lack of evidentiary basis for a statement concerning Flaherty's sitting limitation—were not good reasons for discounting Dr. Meredith's opinion.

The ALJ's first mistake was failing to recognize that Flaherty's chronic condition, by its very nature, causes both "good days" and "bad days." AR at 297. That accounts not only for some inconsistent progress reports in Dr. Meredith's opinion, but also in the difference between Dr. Meredith's opinion and the opinions

of Drs. Sasportas and Mund. Dr. Sasportas, a medical examiner, only saw Flaherty once; "ALJs should not rely heavily on finding of consultative physicians after a single examination." *Selian*, 708 F.3d at 418. Dr. Mund, technically a treating physician, only saw Flaherty twice, and the examination report that comprises the bulk of his medical opinion was written after only a single examination. In short, the ALJ failed to recognize that the nature of Flaherty's condition meant that the first *Burgess* factor (the length of treatment) was particularly important. *See Estrella*, 925 F.3d at 97.

For this reason, faulting Flaherty for not submitting more recent notes from Dr. Meredith also did not constitute "good reasons." Flaherty's last report from Dr. Meredith was submitted in March 2016, shortly before his retirement. As explained above, although Dr. Mund's notes are slightly more recent, they are significantly less helpful in assessing a chronic condition.

Finally, while it is true that Dr. Meredith's determination that Flaherty can only sit for two hours is not explicitly supported by his notes, that alone is not reason enough to discount his opinion. Even if it technically maps onto the second *Burgess* factor (the amount of medical evidence supporting the opinion), the length of treatment is considerably more important in Flaherty's case. Moreover, the VE testified that an individual with fine manipulation problems like Flaherty's would

also be disabled.

The ALJ committed procedural error in failing to properly account for Dr. Meredith's long term of treatment, and he did not apply the treating physician rule in substance. The case is therefore remanded to reassess the *Burgess* factors.[3]

## B. Symptoms and Subjective Complaints

The ALJ must consider, but has discretion in accepting, subjective complaints when determining the RFC. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). If the ALJ decides there is such an impairment, then the ALJ considers whether the severity of the claimant's symptoms align with the record. *Id.* (citing 20 C.F.R. § 404.1529(a)).

Here, the ALJ found that Flaherty's impairment could have caused her alleged

---

[3] During the ALJ hearing, Flaherty also testified that she had an inflamed vagus nerve that caused issues with her back. *See* AR at 38. The ALJ did not discuss this testimony in his report. Although no medical records of an inflamed vagus nerve are in the record (and neither party mentioned it in their briefs), the ALJ should consider developing the record to see if there exist medical evidence supporting this testimony. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2010) ("The ALJ has an obligation to develop the record"); *Davis v. Berryhill*, No. 17-CV-4883 (FB), 2019 WL 1428371, at *4 (E.D.N.Y. Mar. 29, 2019) (remanding when the ALJ failed to develop the record based on a claimant's testimony that he needs to elevate his legs when sitting).

symptoms but that their intensity, persistence, and limiting effects are not entirely consistent with the evidence in the record. He gave reasons for this finding, most notably medical evidence and Flaherty's own testimony as to her ability to conduct her daily activities. Therefore, he did not err in his assessment of Flaherty's symptoms and subjective complaints.

### III

The Court remands for reconsideration of Flaherty's RFC. The ALJ should properly apply all four *Burgess* factors when determining the appropriate weight to give Dr. Meredith's opinion. Flaherty's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**


/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 8, 2019